**Ray J. HUGHES, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

**No. A–12696.**

Court of Criminal Appeals of Oklahoma.

May 13, 1959.

Rehearing Denied July 22, 1959.

Frank Grayson, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Ray J. Hughes, hereinafter referred to as the defendant, was charged by information with the crime of larceny of domestic animals. He was tried before a jury who found the defendant guilty but was unable to agree upon the punishment and left the punishment to be assessed by the trial judge with recommendation for a suspended sentence. The defendant appeals by transcript to this court for reversal upon the contention that the trial court abused its discretion in refusing to follow the recommendation of the jury which was set out in their verdict recommending that the sentence be suspended.

■ Since this is an appeal by transcript, the court is without the benefit of

the testimony received at the trial of the case. However, it is not necessary to detail the facts out of which the charge arose as the only question raised by the defendant is whether or not the trial court abused its discretion in ignoring the recommendation of the jury as to a suspended sentence. The transcript as to the proceedings reveals that the following discussion took place between the trial judge and the jury:

"The Court: Let the record show that the bailiff orally informed the Court that the jury was asking to be advised by the Court as to whether or not they could recommend a suspended sentence.

"It is agreed that the communication from the jury to the bailiff and the passing of the statement from the bailiff to the court in the manner in which it was done in this instance is not objected to and both parties agree that this procedure is proper for this case.

"(There followed an off-the-record discussion and at 2:20 p.m. the jury was called from the jury room, assembled in the jury box, and the defendant, Court and counsel for all parties being present, the following proceedings occurred in open court:)

"The Court: Now, Ladies and gentlemen of the Jury, I understand from the bailiff that you have a question that you want to ask the Court. The proper way to do it is to have you brought into the courtroom and have one of you write out the question on a sheet of paper and pass it back to the Court and I will then confer with the attorneys and make such answer as is proper.

"(At this point a blank sheet of paper was handed to a juror who complied with the Court's request and the question as written was then passed to each of the other jurors, then returned to the Court. There then followed a discussion at the bench out of the hearing of the jury and court reporter.)

"(The following statement was made into the record out of the hearing of the jury:)

"The Court: Let the record show that the jury passed to the Court, after the question had been passed to the balance of the members of the panel, the question as follows: 'Could jury make sentence if agreed to by jury, make the sentence a suspended sentence?'

"It is agreed that the Court may orally advise the jury in effect that any language written on the verdict is surplusage and is in no way binding on the Court.

"However, the Court desires them to understand that they are not precluded from writing anything they may desire on the verdict.

"Is that agreeable, gentlemen?

"Mr. Grayson: Yes.

"Mr. Whelan: Yes.

"(The following statement was made in the presence and hearing of the jury:)

"The Court: Ladies and Gentlemen, the question has been asked the Court, and I understand from observation that the balance of the members of the panel saw it. 'Could jury make sentence if agreed to by jury, make the sentence a suspended sentence?'

"That is the question that all of you wish to ask the Court, is that correct? You all are in agreement that that is the question?

"(There was no dissenting expression from any juror.)

"The Court: You are advised that any words written on the verdict by you are entirely surplusage and in no way binding on the Court and are not part of the verdict.

"However, I want you to thoroughly understand, of course, that you are not precluded from writing whatever you may desire on the verdict, if you thoroughly understand the writing,

if any, on the verdict, if the verdict is accepted by the Court, is not in any way binding on the Court.

"Now, do you all understand that?

"(The jury responded in the affirmative.)

"The Court: All right, you may retire to the jury room and further consider your verdict.

"(At 4:45 p. m., the jury reported to the Court that they had arrived at a verdict, and they were assembled in the jury box, and the defendant, Court and counsel for all parties present, the following proceedings were had in open court:)

"The Court: Ladies and Gentlemen of the Jury, have you arrived at a verdict?

"The Foreman: We have.

"The Court: Will the Foreman hand me the verdict?

"(The Foreman approached the Bench and complied with the request.)

"The Court: Now, as I previously explained to you, Ladies and Gentlemen—the verdict that I have been handed by the Foreman has certain writing on it and before I accept the verdict I want you to thoroughly understand, as I think you do, when I explained it to you before, that the verdict, if it is received will be received by the Court and the writing that is on here, placed on here I presume by the Foreman, is surplusage and does not in any way constitute a part of the verdict; in other words, it is not your verdict; it is not binding on the Court. Now do you all understand that? And, if you tell me you do and understand that in accepting it I accept it with this writing on here purely as surplusage in so far as the verdict itself is concerned and not binding on the Court as a matter of law, if you all understand that, I will accept the verdict.

"Now, is there any misunderstanding about it?

"The Foreman: (From his position immediately in front of the Bench:) The only way we could reach a decision was by writing that on there.

"The Court: That is not a proper way necessarily to arrive at the decision.

"As I previously told you all, you are free to make any writings or put any writings you want to on the verdict, but I want you to thoroughly understand, so there will be no misunderstanding about it, that anything you do put on it is, as I told you, not a part of it and is surplusage. With that understanding are you in accord about submitting the verdict to me?

"The Foreman: Oh, yes.

"(There was no expression of dissent from any member of the jury.)

"The Court: The verdict will be received and the Clerk will read and record the verdict.

"(At this time the Court Clerk read the verdict of the jury down to and including the typewritten portion thereof; then made the following statement:)

"The Court Clerk: Now, this is the portion that has been written on the verdict by the jury.

"The Court: All right, go ahead.

"The Court Clerk: 'With the recommendation for a suspended sentence.'

"The Court: Ladies and Gentlemen of the Jury, is that your verdict and the verdict of each and every one of you, subject to the explanation I have made to you?

"(None of the members of the jury make any expression of dissent.)

"The Court: All right. You are discharged from further consideration of this case and discharged until 9:00 o'clock in the morning."

It is apparent from the foregoing discussion that the trial judge was not without experience in the matter as his advice to the jury was in line with previous decisions of this court in the case of Presnell v. State, 71 Okl.Cr. 162, 109 P.2d 834, the court said:

"Where the jury returns a verdict of guilty and endorses on the verdict, 'We recommend a suspended sentence' such recommendation is not a part of the verdict, and is a matter addressed to the sound discretion of the trial judge as to whether he should follow the recommendation of the jury."

For other cases treating the matter as surplusage, see Williams v. State, 92 Okl. Cr. 70, 83, 220 P.2d 836; Knopp v. State, 49 Okl.Cr. 416, 295 P. 228; Cole v. State, 70 Okl.Cr. 109, 104 P.2d 981; Estes v. State, 35 Okl.Cr. 335, 250 P. 809; Taylor v. State, 79 Okl.Cr. 115, 152 P.2d 123; Severn v. State, 72 Okl.Cr. 141, 114 P.2d 181; Turvey v. State, 95 Okl.Cr. 418, 247 P.2d 304.

■ The granting of a suspended sentence is regulated by statute and is wholly within the discretion of the trial court. The statute provides:

"Whenever any person shall be convicted in any court of record for any crime other than murder, manslaughter or arson, the Judge trying said cause may, after sentence, suspend said judgment and sentence, and allow said person so convicted to be released upon his own recognizance. Said Judge may also suspend the judgment and sentence of a youth, twenty (20) years of age or under, who has been convicted in any court of record of the crime of arson. Provided, that no such person shall be so released, who, has not, prior thereto, borne a good reputation or who may have been prior thereto convicted of a felony in any state or territory of the United States." 22 O.S.Supp. § 991.

Under this statute the trial judge has the judicial discretion to determine whether the accused is eligible for a suspended sentence and whether the court, in the exercise of that discretion, chooses to suspend the sentence. It was said in the case Ex parte Boyd, 73 Okl.Cr. 441, 122 P.2d 162, 163:

"Only those persons coming within terms of statute are eligible for suspended sentence, but they have no right to demand the same; and it may not be granted to them except at the discretion of the court."

Also see Ex parte Banks, 74 Okl.Cr. 1, 4, 122 P.2d 181.

From a review of the reported discussion with the jury, as to their right to recommend a suspended sentence, it is clear that the trial judge made no statement, commitment, or promise that could have possibly misled or confused the jury. He was positive in his statements that it would in no manner be binding upon him. He made it clear that it would only be surplusage and did not constitute a part of the verdict.

The record reflects no promise even to consider the recommendation and he refused to accept the verdict until the jury was thoroughly advised as to these facts and assented thereto. The court is not in a position to say what they would have done had they been in the trial judge's place. The instructions indicate that the good character and previous good reputation was testified to and evidently stood unrefuted. However, the matter was addressed to the sound discretion of the trial judge. We are without the benefit of the trial court's findings as to previous good reputation, but as was said in the Presnell case, supra [71 Okl.Cr. 162, 109 P.2d 836]:

"Unless such investigation shows conduct on the part of the defendant, which indicates that he is not eligible under the statute to receive a suspended sentence for this crime by him committed, this court is of the opinion that great weight should be attached to the recommendation of the jury."

However, the trial court was within his rights in ignoring the recommendation of the twelve jurors and this court will not interfere.

The judgment and sentence of the trial court is therefore affirmed.

POWELL, P. J., and BRETT, J., concur.