Dolvin RENFRO, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13126.

Court of Criminal Appeals of Oklahoma.

May 31, 1962.

Rehearing Denied June 14, 1962.

Jay C. Baker, Ed Morrison, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by Dolvin Renfro, plaintiff in error, defendant below. The defendant was charged by information in the district court of Tulsa County, Oklahoma, with the violation of Title 21 O.S. 1961 § 1283, defining in part it to be unlawful for a person having previously been convicted of a felony in any court of a state or the United States to carry on his person, or in any vehicle which he is operating or in which he is riding as a passenger any pistol, etc.

The defendant was accused of having in the automobile in which he was found, admittedly his .38 Colt revolver, he having been previously convicted of the crime of grand larceny in case No. 14734 in Tulsa County, Oklahoma. Defendant was tried by a jury, convicted and his punishment assessed by the jury at one year in the Oklahoma State Penitentiary. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

The defendant assigns three grounds for reversal, which we shall consider in order of their presentation.

First, he alleges the trial court committed reversible error in not sustaining his oral motion to suppress the evidence.

The trial judge heard evidence on the motion to suppress the evidence. The evidence in substance was to the effect that Ted Naifeh, deputy sheriff, responded to a radio call that there had been a shooting, and that the assailant was parked in an automobile at the rear of St. John Hospital, in Tulsa. On arrival at that place, he was met by officers Farringer and Chadwell.

Naifch said officer Chadwell went into the Hospital, and he and officer Farringer went to the back of the parking lot and found the defendant and one Jerry Smith in an automobile. Approaching the car they observed the men, and asked if they had been involved in a shooting. The men in the car admitted that they had been, and stated that they had brought the victims to the hospital.

The officer said the parties appeared to be intoxicated. The defendant and his passenger were ordered to get out of the car, and upon doing so Naifeh testified that both Renfro and Smith "were real unsteady on their feet". They were placed under arrest for drunkenness, and a search of their persons and the automobile was conducted. In the automobile the .38 calibre pistol, a 410 gauge shot gun, and a .22 rifle were found.

On the basis of the foregoing substantive evidence, the motion to suppress was overruled.

 This ruling is clearly supported by Woods v. State, Okl.Cr., 316 P.2d 628; Scott v. State, 84 Okl.Cr. 171, 180 P.2d 196; Greer v. State, 88 Okl.Cr. 195, 201 P.2d 274.

In Scott v. State, supra, the rule was announced:

"Whether search and seizure from an automobile is reasonable, is, in its final analysis, to be determined as a judicial question, in view of all the circumstances under which it is made.

"The question of suppressing evidence being a judicial one, this court will not reverse the trial court upon a question of fact where there is a conflict of evidence, and there is competent evidence reasonably tending to support the findings of the trial court.

"Where a defendant is lawfully arrested, and his automobile searched, the search made incident to such lawful arrest is not an invasion of the defendant's constitutional rights."

The defendant's second proposition is that the trial court erred in receiving the verdict in the form in which it was returned, and for failure to require the jury to retire for further deliberation.

The verdict returned into open court read as follows:

"We, the jury, drawn, impaneled and sworn in the above entitled cause, do upon our oaths find the defendant GUILTY of possession of a firearm after previous conviction of a felony as charged in the information herein and fix his punishment at 1 year in the State Penitentiary *with the recommendation that the sentence be suspended.*" [Emphasis now supplied.]

The following proceedings were thereafter had in relation thereto:

"Mr. Baker [attorney for defendant]: If I am correct, it's agreeable with the State that the record may be taken on this dictaphone machine; is that correct?

"Mr. Flanagan [assistant county attorney]: We agree.

"Mr. Baker: Your Honor, as I recall the verdict, it was that finding the defendant guilty and sentencing him to one year in the penitentiary, recommending a suspended sentence. At this time, we would object to the form of the verdict to being an informal verdict. Under the decisions of the Court of Criminal Appeals it's improper and we request that the jury be sent back after being advised that since he has been previously convicted of a felony the defendant cannot be given a suspended sentence, sent back with a new verdict to—

"The Court (interrupting): Do you concur?

"Mr. Morrison [attorney for defendant]: Yes, Your Honor, that's the motion I was making.

"The Court: Do you concur also?

"Mr. Flanagan: The State does not concur, Your Honor. The verdict is in form. The jury can recommend to the Court, but the Court, of course is not bound by the jury's recommenda-

tion. But the fact that a verdict contains a recommendation to the Court does not invalidate the verdict in any manner.

"Mr. Baker: Your Honor, Mr. Flanagan knows as well as Your Honor does that this Court cannot suspend a sentence. It has no power, and the jury should make—

"The Court (interrupting): At this time, let me advise the jury that due to the fact that under the statutes of the State of Oklahoma that there is no possible way that this defendant may receive a suspended sentence. If your verdict of guilty was based upon that premise, then I will at this time permit the jury to go back to the jury deliberation room and deliberate further. If you want to bring in the same verdict again, with the understanding that, of course, your recommendations have no probative value so far as the Court is concerned. All the jurors understand that? Now, you may go back to the jury deliberation room to deliberate further if you desire.

"Mr. Flanagan: Your Honor, the State wishes to take exceptions to the action of the Court and remarks of the Court. The jury has returned a verdict of guilty in this case and fixed the punishment and the jury—the verdict is in proper form and is a verdict that is binding on this Court as well as on the defendant. Now, the State objects to this jury returning to reconsider the verdict or any other verdict.

"Mr. Baker: I can cite this Court decisions in numerous cases where that upon objection—

"The Court: At this time the Court will inquire of the jury. Do you desire to go back and deliberate further?

"Mr. Robert E. Reed: Apparently not.

"The Court: The Court at this time will poll the jury. Mildred Goltz, is this your verdict?

"Mildred Goltz: Yes, it is.

"The Court: Arrived at by you free —this is your free and open opinion—

"Mildred Goltz (interrupting) Yes sir.

"The Court (continuing): expressed herein?

"Mildred Goltz: Yes, sir."

And so went the polling of the other eleven jurors.

"The Court: Is this the verdict of the individual twelve people who are sitting in this jury box now, that unqualifiedly vote for guilty, knowing the fact that the Court cannot suspend the sentence at this time? Is that so? Are there any dissents?

"Mr. Baker: I heard a 'yes', Your Honor. I heard a 'yes', sir.

"The Court: Are there any dissents?

"Mr. Baker: There he is. He stuck up his hand.

"Mr. Ferris: .The Judge didn't tell us the writing on the end of the sentence would be waived.

"The Court: As I have told you before, Mr. Ferris, that I cannot suspend the sentence. Is your verdict of guilty still in effect, knowing that?

"Mr. Morrison: Your Honor, may I ask—make a request of the Court?

"The Court: Just a minute.

"Mr. Morrison: In view of what the juror has said in this case, may the defense request that they have an opportunity to discuss it amongst themselves as to any other verdict and questions involved in this case?

"Mr. Flanagan: The State objects, Your Honor.

"The Court: You mean to discuss with whom?

"Mr. Baker: Yes, there was a dissent, Your Honor, and one 'Yes', and there was—

"Mr. Morrison: I take it at this time they will be allowed without any further comments—

"The Court: I haven't satisfied myself insofar as Mr. Ferris is concerned. Mr. Ferris, is this your verdict? Would this be your verdict knowing the fact that the sentence could not be suspended?

"Mr. Ferris: Knowing the fact that the sentence could not be suspended? (Pause of 30 seconds) Yes, sir.

"The Court: The verdict is received.

"Mr. Baker: Note the exceptions of the defendant to the receipt of the verdict by this Court."

██ The defendant contends that the verdict is void for ambiguity. The case of Hughes v. State, Okl.Cr., 346 P.2d 355 (certiorari denied 361 U.S. 537, 80 S.Ct. 610, 4 L.Ed.2d 538) is very much in point, both factually and from the appellate law, with the case at bar. Therein this court said:

"It is apparent from the foregoing discussion that the trial judge was not without experience in the matter as his advice to the jury was in line with previous decisions of this court in the case of Presnell v. State, 71 Okl.Cr. 162, 109 P.2d 834, the court said:

" 'Where the jury returns a verdict of guilty and endorses on the verdict, "We recommend a suspended sentence" such recommendation is not a part of the verdict, and is a matter addressed to the sound discretion of the trial judge as to whether he should follow the recommendation of the jury.'

"For other cases treating the matter as surplusage, see Williams v. State, 92 Okl.Cr. 70, 220 P.2d 836; Knopp v. State, 49 Okl.Cr. 416, 295 P. 228, 229; Cole v. State, 70 Okl.Cr. 109, 104 P.2d 981; Estes v. State, 35 Okl.Cr. 335, 250 P. 809; Taylor v. State, 79 Okl.Cr. 115, 152 P.2d 123; Severn v. State, 72 Okl.Cr. 141, 114 P.2d 181; Turvey v. State, 95 Okl.Cr. 418, 247 P.2d 304.

\* \* \* \* \* \*

"From a review of the reported discussion with the jury, as to their right to recommend a suspended sentence, it is clear that the trial judge made no statement, commitment, or promise that could have possibly misled or confused the jury. He was positive in his statements that it would in no manner be binding upon him. He made it clear that it would only be surplusage and did not constitute a part of the verdict."

Holman v. State, 97 Okl.Cr. 279, 262 P.2d 456 also bears marked similarity to the case at bar. Therein the court said:

"Where the jury returns a verdict of guilty and endorses on the verdict, 'We recommend a suspended sentence,' such recommendation is not a part of the verdict, and is a matter addressed to the sound judicial discretion of the trial judge as to whether he should follow the recommendation of · the jury."

The defendant relies upon Williams v. State, 92 Okl.Cr. 70, 220 P.2d 836, and which case, in light of analysis, does not support his contention, but sustains the procedure employed herein. Coe v. State, 86 Okl. Cr. 297, 192 P.2d 291 is not in point in the case at bar.

Herein the jury was polled as to the elimination of its suggestion to suspend the sentence, and none dissented thereto. Hence the verdict should stand. There was no denial of any rights of the defendant, since the suggestion of the suspension of the sentence, by all the authorities, was not binding on the trial judge, but was mere surplusage. The proceedings herein were "much ado about nothing". Under these conditions and the controlling principles of law, defendant's contention on this premise is without substantial merit.

██ Finally, defendant attacks the constitutionality of Title 21 O.S.1961 § 1283. The defendant cites no authorities in support of this contention, but in support of its position the State cites State v. Robinson,

**50**

217 Or. 612, 343 P.2d 886, and Ex parte Rameriz, 193 Cal. 633, 226 P. 914, 34 A.L.R. 51.

In the Robinson case, supra, it was said:

"Statute prohibiting a person convicted of a felony from owning or having in his possession a firearm capable of being concealed upon the person does not arbitrarily deny ex-convicts rights and privileges which others possess and does not violate equal protection clause of state and federal constitutions, and classification is not capricious or irrelevant to the legislative purpose. * * *

\* \* \* \* \* \*

"Statute prohibiting a person convicted of a felony from having in his possession or under his custody or control any firearm capable of being concealed upon the person does not infringe section of constitution declaring that people shall have right to bear arms in defense of themselves and the state."

We not only do not believe provisions of 21 O.S.1961 § 1283 are unconstitutional, but to the contrary are of the opinion that it is a protective measure, beneficial to society. It is designed to prevent people of demonstrated irresponsibility from possessing instruments of death, or as device of aggressive law violation.

As was said in State v. Robinson, supra:

"We can not say that a classification based upon that proposition is capricious or that it is irrelevant to the legislative purpose. Many other states have enacted similar legislation and it has been recognized as valid. The defendant seeks to make a distinction between ex-convicts who committed crimes of violence and those crimes were such as embezzlement and income tax evasion. A person who embezzles money, fails to report his income or commits any other non-violent felony is evidently deficient in the deference to law which must be expected of all who live in a democracy. Such a person displays a lack of proper regard for the duties of citizenship and the normal restraints to which virtually all others yield instinctively. By his own felonious conduct he classifies himself and places himself in a category different from that composed of the law abiding. When the legislature concludes that a person of that kind can not be trusted with a concealable weapon we surely can not say that its decision lacks reason."

We are wholly in agreement with the foregoing conclusion of the Oregon court.

Hence, we are of the opinion that the statute in question is neither arbitrary, discriminatory or capricious and does not deprive defendant of due process of law and equal protection of the law, so as to render it unconstitutional.

For all of the foregoing reasons, the judgment and sentence is affirmed.

NIX, P. J., and BUSSEY, J., concur.