**Fred Vernon BUNCE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–84–691.

Court of Criminal Appeals of Oklahoma.

May 19, 1987.

Lisbeth L. McCarty, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Deputy Chief, Crim. Div., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Fred Vernon Bunce, was convicted in the District Court of Texas County, Case No. CRF-83-192, of First Degree Rape, and sentenced to twenty years' imprisonment. He was acquitted of the charge of kidnapping. He appeals his conviction raising eight assignments of error.

During the trial, J.M. testified that during the early morning hours of November 11, 1983, she was driving around Guymon, Oklahoma after leaving a bar where she had half of a drink. She noticed a car following her and pulled over, turned off her lights and shifted into park to appear to have arrived at home. Her door was opened by Robert Trevino, one of the codefendants, who dragged her out by her hair, punched her twice in the face, and attempted to put her into the appellant's car. After driving a short distance with her legs hanging out, the car was stopped, and Daniel Vizcaino, the other codefendant of the appellant, assisted Trevino in placing J.M. into the car. The appellant was driving. She then testified that Trevino and Vizcaino ripped her clothes off and she was raped first by Trevino, then the appellant, and then Vizcaino. Afterward, as they neared a highway, the engine of the car died. J.M. was allowed to hurriedly dress, was told by Vizcaino that he had a gun and she was forced out of the car. She jumped into a ditch and was followed by Vizcaino. Shortly thereafter, when she looked up she saw a police car behind the disabled car, ran to it, told the officer they were trying to kill her, and was allowed into the backseat. She identified all three men at the trial.

Officer Serpe of the Guymon Police Department located the victim's vehicle which had the driver's door open and the motor running.

During the trial Dr. Larry Lowery and Lieutenant Wendy Dunham testified to the injuries they observed on J.M., including a black eye swollen shut and bleeding, scratch marks from fingernails down her back to her buttocks, and fresh bruises on her ribs and spine.

An O.S.B.I. forensic chemist testified concerning hair samples he analyzed including one pubic hair, which was microscopically consistent with the victim's, found in the appellant's pubic hair. Also one scalp hair consistent with that of the victim was found in the appellant's underwear.

Trevino testified that J.M. voluntarily got into the car with them, and consented to sexual intercourse with him, and that Vizcaino also had consensual sexual intercourse with her. He was uncertain as to whether or not the appellant had sexual intercourse with her.

■ As his first assignment of error, the appellant complains that the court erred in failing to suppress evidence obtained as the result of what he claims was an illegal search. During a search of the appellant's car a white tennis shoe, an earring, and approximately fifty hairs were recovered. These were entered into evidence during the trial. The tennis shoe was the mate to the one taken from the victim, the earring belonged to her, and eight of the hairs were identified as having been most likely pulled from her scalp. (Tr. 267). During a suppression hearing, the appellant testified concerning a "confession" which he alleges in his brief was taken under "stressful circumstances." Although the court denied the motion to suppress, the State did not submit the confession as evidence during the trial. After an objection by the appellant to testimony concerning the items recovered from the car, the trial court dismissed the jurors, and held a hearing on the legality of the search because defense counsel argued that the appellant's consent was given so close in time to the allegedly involuntary confession that the consent to search must also be considered illegally obtained. The trial court found that the consent was too remote in time to be tainted by the circumstances surrounding the confession. This Court will not disturb a trial court's ruling concerning motions to suppress evidence where there is competent evidence in the record reasonably tending to support the findings of the trial

court. *Mahan v. State*, 508 P.2d 703 (Okl. Cr.1973). The record reveals that the consent to search was obtained about five and a half hours after the interrogation resulting in a confession. The record further reveals that the consent and the appellant's rights were carefully explained to him. We find that the record is more than sufficient to support the trial court's ruling. This assignment of error is meritless.

■ As his next assignment of error, the appellant contends that the trial court erred in failing to grant a change of venue. The basis for the motion was pretrial publicity and possible contact of a large number of prospective jurors with the victim or her parents. As we stated in *Hammons v. State*, 560 P.2d 1024, 1029 (Okl.Cr.1977):

When considering a motion for a change of venue, the presumption of law is that a defendant can get a fair and impartial trial in the county in which the offense charged was committed. The presumption is rebuttable, but the burden of persuasion is upon the defendant. *Fry v. State*, 91 Okl.Cr. 326, 218 P.2d 643 (1950). A mere showing that pretrial publicity was adverse to the defendant is not enough. *Shapard v. State*, Okl.Cr., 437 P.2d 565 (1967). The defendant must show by clear and convincing evidence that jurors were specifically exposed to the publicity and that he was thereby prejudiced. *Tomlinson v. State*, Okl.Cr., 554 P.2d 798 (1976). The granting of a change of venue is a discretionary matter within the powers of the trial court and unless it is clear from the record that the trial court has abused its discretion, or committed error in judgment, this Court will not overrule the trial court, especially where there has been an extensive voir dire examination to determine the prejudicial effect of the pretrial publicity. *Shapard v. State*, supra.

In the case at bar, the trial court stated that no juror expressed any special knowledge of the case although some said that the case had been the subject of newspaper articles and gossip. The judge found that all of the jurors without exception stated that the knowledge would not influence

their duties as they had no opinion concerning the guilt or innocence of the defendants. He further noted that defense counsel did not challenge the jurors for cause. The judge then denied the motion for change of venue. We do not find an abuse of discretion and therefore find this assignment of error to be without merit.

■ As a third assignment of error the appellant maintains that his trial should have been severed from that of his codefendants. Although the appellant cites several reasons why the trial should have been severed, only one of them is supported by any argument or authority and therefore we will address that issue alone. *See Perez v. State*, 614 P.2d 1112 (Okl.Cr. 1980). In that instance, the appellant argues that the pictures taken of the victim and admitted into evidence were prejudicial. Those pictures show the victim with a bruised and swollen eye, partially closed due to swelling, and a scratch on one of her arms. Because the victim testified that one of the other defendants inflicted the injuries, he complains that these pictures could not be introduced against him as they were irrelevant and too prejudicial. We disagree. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S.1981, § 2401. Injuries shown in the picture corroborate the testimony of the victim that she was forced to have sexual intercourse against her will, and that physical force was used against her. The fact that one of the other defendants is the one who actually inflicted the injuries is of no consequence as the appellant was present and an active participant in the crime. Consequently, he was equally culpable. *See McDonald v. State*, 674 P.2d 1154 (Okl.Cr.1984). Therefore, even if the trials had been severed, the photographs would have been admissible against the appellant. Finding no abuse of discretion of the trial court, there is no merit in this assignment of error. *See Faubion v. State*, 569 P.2d 1022 (Okl. Cr.1977).

■ The appellant next asserts error by the trial court in refusing to order the appearance of an out-of-state witness, or to grant a continuance in order that the witness could appear. The appellant wished to call a character witness, who was the assistant director of a half-way house in Wichita, Kansas, where the appellant had stayed about five months. Defense counsel admitted during the hearing of the motions that the witness was not material to the issue of the appellant's guilt or innocence, but that he would testify concerning the appellant's general reputation, and psychological records kept at the half-way house. Responding to questions from the court, defense counsel could not assure the court that the witness would be qualified to give any psychological information, nor could he assure the court that the acquaintance of the witness with the appellant was recent enough to be relevant. The court then expressed concerns that the witness would be brought from Kansas at great expense and then be unable to testify because he would lack the proper credentials to testify as an expert, and his acquaintance with the witness was too remote from the time of the alleged crimes to be relevant. He denied the motion to order the appearance of the witness, and at a later date denied the motion for continuance. No affidavit was attached to that motion for continuance as required by 12 O.S.1981, § 668. This Court has consistently held that a motion for continuance must be accompanied by an affidavit for continuance. *Nichols v. State,* 555 P.2d 70 (Okl.Cr.1976). The motion to summon an out-of-state witness, and a motion for continuance are within the discretion of the trial court to grant or deny. *See* 22 O.S. 1981, § 723, and *Roberts v. State,* 634 P.2d 729 (Okl.Cr.1981). We do not find any abuse of that discretion.

In a fifth assignment of error, the appellant alleges that the trial court committed fundamental error in failing to grant a new trial based upon comments by the prosecutor concerning the appellant's right to remain silent. Appellant cites three instances during the closing argument of the prosecutor where he calls attention to the fact that the appellant did not testify:

As I recall in opening statement by the defendants you were told there was going to be an admission as I recall from all three defendants but only one got on and basicaslly [sic] he in their behalf admitted that—he didn't specifically bring it in to Mr. Bunce because he wasn't watching.

(Tr. 476).

You were told in opening statement by one of the defendants that you were going to hear certain things. You didn't hear from that witness. Remember the opening statement, closing argument is not evidence. It is only what you heard from the witness stand, the evidence introduced by the court and what you remember.

(Tr. 505).

No. 10 the court tells you for sexual intercourse there must be penetration. Very specifically she answered the question as to each and every defendant. It certainly was not contradicted by the only defendant you heard from.

(Tr. 506).

■ We first note that no contemporaneous objection was made to the comments, and therefore any error is deemed waived except that which is fundamental.[1] "Whether the comment rises to fundamental error depends on the particular facts and circumstances of each case." *Martin v. State,* 674 P.d 37, 41 (Okl.Cr.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1448, 79 L.Ed.2d 767 (1984). In two of the comments quoted above, the prosecutor refers to the opening statement. The opening statement was given by the attorney representing Trevino and Vizcaino. An exami-

---

1. In cases involving prosecutorial comment upon post-arrest silence we have held that where defense counsel fails to object to the improper comments the error is deemed waived unless it rises to the level of fundamental error. *Martin,* and *Harris v. State,* 645 P.2d 1036 (Okl. Cr.1982), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 487, 74 L.Ed.2d 631 (1982). Similarly, the absence of an objection in cases where a prosecutor comments upon the failure of a defendant to take the witness stand is waived unless the error is fundamental.

nation of that statement reveals that counsel referred to what he believed the evidence would show, but did not mention whom, if anyone, the defense intended to call. The admission to which the prosecutor is apparently referring is the statement by the defense counsel that all three codefendants had sexual intercourse with J.M. Appellant's counsel reserved his opening statement, but later waived it. We find no error in the second and third comments quoted. The second is merely reminding the jurors that opening and closing statements are not evidence, and that there were statements made in defense counsel's opening statement which were not the subject of any testimony presented. This is a proper observation for closing argument. *See Frazier v. State,* 607 P.2d 709 (Okl.Cr. 1980). The third comment addresses the issue of whether sexual intercourse occurred, and the prosecutor argues that the fact that it did occur was uncontradicted. We have frequently held that a statement by the State that its evidence is uncontradicted is not a comment on the part of the prosecution relating to a defendant's failure to testify. *Cameron v. State,* 561 P.2d 118 (Okl.Cr.1977).

■ Concerning the first comment quoted above, we find that to be harmless beyond a reasonable doubt. *See Bernard v. State,* 538 P.2d 1109 (Okl.Cr.1975) and *McGaha v. State,* 492 P.2d 1101 (Okl.Cr. 1971) which both quoted from *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The test for cases such as the one at bar is stated in *Chapman* as whether there is a reasonable possibility that the comments complained of might have contributed to the conviction. We find they do not. The appellant was charged with kidnapping and first degree rape. He was acquitted on the kidnapping charge, as were his two codefendants. On the rape charge the only controverted issue was the consent of the victim. The testimony of the State's witnesses concerning her injuries, and the photographs entered into evidence overwhelmingly support a lack of consent.

■ The appellant also complains of a comment made by the arresting officer that after he arrested Trevino and Vizcaino and read to them their *Miranda* rights, they declined to make any statement. The appellant claims that this violation of the rights of his codefendants severely prejudiced him as well, due to their joint trial. The record reveals that the officer's answer was not fully responsive to the question of the prosecutor who was asking about the physical evidence taken from Trevino and Vizcaino. The officer replied that at the police department he warned Trevino of his rights, took his clothes from him and gave him overalls to wear. The officer then asked him if he wanted to make a statement and he said no. Nothing in the answer states that Vizcaino declined to make a statement. No objection was made to this answer, therefore the appellant has waived any error. *See Boomershine v. State,* 634 P.2d 1318 (Okl.Cr.1981).

As our review of the comments of which the appellant complains reveals no error warranting either reversal or modification of the sentence, and in light of the overwhelming evidence of guilt, we find this assignment of error has no merit.

■ As a sixth assignment of error the appellant complains of prosecutorial comments during closing argument which he argues resulted in invoking societal alarm. None of the comments was preserved by an objection. Therefore none of the alleged errors are preserved for review. *Mahorney v. State,* 664 P.2d 1042 (Okl.Cr. 1983). Having reviewed the comments for fundamental error and finding no such error, this assignment is meritless.

■ As his seventh assignment of error, the appellant urges that his sentence was excessive. This Court consistently holds that excessiveness of punishment is to be determined by a study of all the facts and circumstances surrounding each individual case, and that we do not have the power to modify a sentence under all these facts and circumstances unless the sentence is so excessive as to shock the conscience of the Court. *Dilworth v. State,* 611 P.2d 256 (Okl.Cr.1980). Under 21 O.S.1981, § 1115,

first degree rape is punishable by "death[2] or imprisonment in the penitentiary, not less than five (5) years, in the discretion of the jury...." As twenty years is well within the limits prescribed by law, we find this assignment of error to be without merit.

■ As his last assignment of error the appellant claims that he received ineffective assistance of counsel.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

\* \* \* \* \* \*

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He states that the only evidence to support a rape conviction against him is the testimony of the victim, and the "admissions" by his attorney and the attorney representing the codefendants. He claims that his attorney was ineffective because he requested a rape instruction which confessed sexual intercourse, and because he failed to request an instruction on second degree rape. The

instruction which admitted sexual intercourse instructed the jury that the defendants claimed that the act was accomplished with the consent of J.M. In reviewing counsel's effectiveness we are required to indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. A consent defense is certainly within the range of reasonable professional assistance.

■ The position of his attorney concerning the second degree rape instruction is reflected in the transcript. He argued that the State had to meet the burden of proof for first degree rape, or there would be no rape conviction at all. Having heard the evidence, the trial court agreed. We find that the appellant's contention concerning a second degree rape instruction fails in the first component of the *Strickland* test because he has not shown that his counsel's performance was deficient.

This assignment of error is without merit.

Accordingly, the judgment and sentence is AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., concurs in results.

---

2. The Supreme Court of the United States in a plurality opinion has expressed the view that the death penalty is a disproportionate punishment for rape. *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977).